UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| CLEOPHUS PRINCE, JR., Petitioner, v. RONALD DAVIS, Warden of San Quentin State Prison, Respondent. | Case No.: 16cv00871 BAS (KSC) **DEATH PENALTY CASE** **ORDER:** **(1) RULING ON EXHAUSTION STATUS OF DISPUTED CLAIM; (2) GRANTING MOTION FOR STAY AND ABEYANCE [ECF No. 42]; (3) STAYING CASE; AND (4) SETTING DEADLINES** |
|---|---|

On May 23, 2019, the parties filed a Joint Statement Regarding Exhaustion, agreeing that twenty-two claims and/or sub-claims in the federal Petition are exhausted, nine claims and/or sub-claims are unexhausted, and disagreeing on the exhaustion status of Claim XXV. (ECF No. 40.) In an Order dated June 3, 2019, the Court ruled on the exhaustion status of the agreed-upon claims and took the parties' position statements on the disputed claim under submission for resolution along with the stay and abeyance matter. (ECF No. 41.) On June 13, 2019, Petitioner filed a Motion to Stay the Federal Case Pending the Exhaustion of Remedies, accompanied by a separate Memorandum of Points and Authorities in support of the motion. (ECF Nos. 42, 42-1.) On July 10, 2019, Respondent

1

filed an Opposition to Petitioner's Motion with an incorporated memorandum of points and authorities, and on August 1, 2019, Petitioner filed a Reply with an incorporated memorandum of points and authorities. (ECF Nos. 45, 48.) On November 6, 2019, the Court held oral argument on the stay and abeyance motion.

For the reasons discussed below, the Court **FINDS** Claim XXV is unexhausted, **GRANTS** Petitioner's Motion to Stay the Federal Case [ECF No. 42], **STAYS** this case pending the exhaustion of state remedies, and **SETS** deadlines as outlined below.

## I. PROCEDURAL HISTORY

In an Information dated March 25, 1992, Petitioner was charged with six counts of murder in the deaths of Tiffany Schultz, Janene Weinhold, Holly Tarr, Elissa Keller, Amber Clark and Pamela Clark, each in violation of Cal. Penal Code § 187(a), one count of forcible rape in violation of Cal. Penal Code § 261(2), thirteen counts of residential burglary in violation of Cal. Penal Code § 459, six counts of attempted residential burglary in violation of Cal. Penal Code § 664/459, two counts of indecent exposure in violation of Cal. Penal Code §314.1, one count of assault with a deadly weapon by means of force likely to produce great bodily injury in violation of Cal. Penal Code § 245(a)(1), one count of battery in violation of Cal. Penal Code § 242, one count of perjury under oath in violation of Cal. Penal Code § 118, and one count of possession of a weapon in jail in violation of Cal. Penal Code § 4574(a). (CT 225-46.) The Information also alleged that Petitioner used a deadly weapon, a knife, in the commission of each of the six murders and the forcible rape within the meaning of Cal. Penal Code §§ 12022(b) and 12022.3(a), respectively. (Id.) Petitioner was also charged with the special circumstances of multiple murder and murder during the commission or attempted commission of a rape pursuant to Cal. Penal Code §§ 190.2(a)(3) and 190.2(a)(17). (CT 227, 231.) Prior to trial, the trial court granted a motion to sever five of the counts, including the two counts charging indecent exposure, one count charging possession of a weapon in jail, one count of assault and one count of battery, to be tried separately from the other twenty-seven counts. (See RT 396-97; CT 1062-66.)

On July 13, 1993, after the guilt phase proceedings and deliberations, the jury returned a verdict of guilty on each of the twenty-seven counts tried, finding Petitioner guilty of six counts of murder and one count of rape with the special circumstances of multiple murder and rape-murder, and finding he used a deadly weapon, a knife, in each of the murders and the rape. (CT 3789-98.) The jury also found Petitioner guilty of thirteen counts of burglary, six counts of attempted burglary, and one count of perjury under oath. (Id.) On August 17, 1993, after penalty phase proceedings and deliberations, the jury returned a verdict of death on each of the six counts of murder. (CT 3819-20.) On the prosecution's motion and without defense objection, the trial court dismissed the five severed counts. (CT 3821.) On November 5, 1993, Petitioner was sentenced to death on each of the six murder counts. (CT 3830.)

On February 20, 2002, Petitioner filed the opening brief on direct appeal. (Lodgment No. 207.) Respondent's brief was filed on November 8, 2002, and Petitioner's reply brief was filed on June 4, 2003. (Lodgment Nos. 208, 209.) On April 30, 2007, the California Supreme Court affirmed the convictions and sentence on direct appeal. People v. Prince, 40 Cal. 4th 1179 (2007). The petition for a writ of certiorari was denied by the United States Supreme Court on January 7, 2008. Prince v. California, 552 U.S. 1106 (2008).

On August 20, 2007, Petitioner filed a habeas petition with the California Supreme Court. (Lodgment No. 216.) On July 27, 2011, Petitioner filed an amended petition accompanied by four volumes of declarations and exhibits. (Lodgment Nos. 217-25.) An informal response was filed on October 15, 2012. (Lodgment No. 226.) A reply was filed on September 23, 2013. (Lodgment No. 227.) On April 11, 2018, the California Supreme Court denied the state habeas petition. (Lodgment No. 228.)

On April 11, 2019, Petitioner filed a federal Petition and accompanying exhibits labeled Appendix Volumes I-X, deemed filed nunc pro tunc to April 10, 2019. (See ECF Nos. 28, 33.) On May 23, 2019, the parties filed a Joint Statement Regarding Exhaustion. (ECF No. 40.) On June 13, 2019, Petitioner filed a Motion to Stay the Federal Case Pending the Exhaustion of Remedies accompanied by a separate Memorandum of Points

and Authorities in support of the motion. (ECF Nos. 42, 42-1.) On July 10, 2019, Respondent filed an Opposition to Petitioner's Motion to Stay the Federal Case Pending the Exhaustion of Remedies with an incorporated memorandum of points and authorities. (ECF No. 45.) On August 1, 2019, Petitioner filed a Reply in Support of Motion to Stay the Federal Case Pending the Exhaustion of Remedies with an incorporated memorandum of points and authorities. (ECF No. 48.) On October 11, 2019, Petitioner filed a First Amended Petition and a supplemental volume of exhibits labeled Appendix Volume XI. (ECF Nos. 50, 51.)

## II. DISCUSSION

### A. **Exhaustion**

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." Picard v. Connor, 404 U.S. 270, 275 (1971); see also 28 U.S.C. §§ 2254(b) and 2254(c). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." Picard, 404 U.S. at 275.

As set forth above, the parties agree on the exhaustion status of all claims in the federal Petition except for Claim XXV;[1] Respondent maintains that Claim XXV is exhausted and Petitioner contends it is unexhausted. (ECF No. 40 at 2.) In Claim XXV, Petitioner asserts that "[t]rial counsel failed to conduct an adequate investigation and failed to develop and present readily available mental health mitigating evidence," including

---

[1] As noted above, in a June 3, 2019 Order, the Court ruled on the exhaustion status of each claim in the federal Petition based on the agreement and stipulation of the parties outlined in the joint statement filed on May 23, 2019, with the exception of disputed Claim XXV. (See ECF No. 41.) After that ruling, on October 11, 2019, Petitioner filed a First Amended Petition. (See ECF No. 50.) Petitioner has since indicated that "[t]his First Amended Petition solely amends Claim I of the previously-filed petition. In all other respects, the petition and claims raised therein remain unchanged." (ECF No. 52-1 at 2.) Petitioner also stated that "[t]hese amendments to Claim I do not affect the May 23, 2019, joint statement regarding exhaustion (ECF No. 40), as Claim I remains unexhausted." (Id.)

assertions that "counsel failed to conduct a thorough investigation of Mr. Prince's childhood, background and upbringing" and that "counsel badly mishandled the investigation of his resulting mental health impairments." (ECF No. 50 at 279.)

Petitioner contends that "[t]he focus of Claim XXV - counsel's failure to present evidence of brain dysfunction through a qualified neuropsychologist - is entirely new," and that "[s]tate habeas counsel faulted trial counsel's presentation of mitigating social history and history of trauma, but not brain neuropsychological impairments." (ECF No. 40 at 9.) In Claim XXV, Petitioner notes that trial counsel retained several experts to evaluate and test Petitioner, including psychologists Yedid and Lipson, that Yedid recommended further testing by a neurologist, and that Lipson's findings were "largely consistent" with Yedid's. (ECF No. 50 at 279-80.) Petitioner indicates that Dr. Asarnow also performed testing, stated those tests showed no pathology in Petitioner's brain, and recommended no further testing. (Id. at 280.) Petitioner asserts that "[a]t this point trial counsel had different results from different experts" and acted unreasonably in failing to investigate further given the conflicting results or present any of the evidence to the jury, and faults counsel for only presenting testimony by a sociologist, noting that the lack of diagnosis and information about PTSD was ineffective. (Id. at 280-82.) Petitioner also offers a report by Dr. Martell concerning testing that reflects Petitioner's impairments, states that trial counsel's experts "arrived at fundamentally similar results," and as such, asserts that the information was available at the time of trial and trial counsel was ineffective for failing to investigate and present the information to the jury. (Id. at 282-86.)

Respondent notes that in the state petition, Petitioner "claimed trial counsel rendered constitutionally ineffective assistance of counsel by failing to retain expert services to aid in the investigation and presentation of mitigation evidence," including failing to consult with and present experts in trauma, psychological disabilities of individuals who commit homicides and sexual crimes, failing to present background evidence and expert testimony concerning trauma and neglect, mental illnesses, attachment disorder, and other behavioral issues, including the implications of being born abnormally short. (ECF No. 40 at 4-5,

citing Lodgment No. 291 at 1111-1262.)  Respondent maintains that "[t]he presentation of additional facts in a federal petition does not evade the exhaustion requirement when the petitioner has presented the substance of his claim to a state court and the supplemental evidence does not fundamentally alter the legal claim considered by the state court."  (Id. at 5, citing Vasquez v. Hillery, 474 U.S. 254, 257-58 (1986).)  Respondent contends that "[w]hile Dr. Martell's report may present additional evidence to support the claim, the basis of Petitioner's legal claim remains constant."  (Id. at 5-6.)

In Hillery, the Supreme Court held that: "We have never held that presentation of additional facts to the district court, pursuant to that court's directions, evades the exhaustion requirement when the prisoner has presented the substance of his claim to the state courts."  474 U.S. at 257-58.  In this case, the additional facts presented in the federal petition were not pursuant to this Court's directions, but instead were the result of Petitioner's own actions.  See, e.g., Aiken v. Spaulding, 841 F.2d 881, 884 n.3 (9th Cir. 1988) (distinguishing Hillery and finding claim unexhausted, reasoning that: "Here, by contrast, the new evidence was presented by the habeas petitioner on his own initiative, and the evidence places his claim in a significantly different and stronger evidentiary posture than it had when presented in state court.")  The Court is not persuaded that Hillery governs in this instance.  Instead, Petitioner's citation to and reliance on the Ninth Circuit's decision in Dickens v. Ryan, 740 F.3d 1302 (9th Cir. 2014) (en banc), is persuasive.  (See ECF No. 40 at 8-10.)  The Dickens Court, acknowledging both Hillery and prior Ninth Circuit case law, stated that: "A claim has not been fairly presented in state court if new factual allegations either 'fundamentally alter the legal claim already considered by the state courts,' or 'place the claim in a significantly different and stronger evidentiary posture than it was when the state courts considered it.'"  Dickens, 740 F.3d at 1318, quoting and citing Hillery, 474 U.S. at 260, Beaty v. Stewart, 303 F.3d 975, 989-90 (9th Cir. 2002), Aiken, 841 F.2d at 883, and Nevius v. Summer, 852 F.2d 463, 470 (9th Cir. 1988).

Petitioner contends that the federal claim is "fundamentally different" than the claim that was previously presented to the state supreme court, in that: "In Claim XXV, Mr.

Prince alleged that trial counsel was ineffective for failing to present the testimony of a qualified neuropsychologist who could have testified to Mr. Prince's memory, language, and frontal lobe dysfunction; the likely existence of a 'localized lesion involving the left inferior prefrontal cortex;' and a diagnosis of 'a neurodevelopmental language disorder that is also associated with memory impairment.'" (ECF No. 40 at 6, quoting ECF No. 28 at 278; see also ECF No. 50 at 283.) Petitioner asserts that "[i]n contrast to the new evidence offered by Mr. Prince, state habeas counsel did not allege trial counsel's ineffectiveness for failing to present evidence of frontal lobe damage, neuropsychological deficits, and exposure to neurotoxins." (Id. at 7.) He argues that "[n]one of the allegations of trial counsel ineffectiveness raised by state habeas counsel relate to the failure to *present evidence of brain damage by a neuropsychologist*," and that the prior claim "did not allege a lesion to the left pre-frontal cortex, did not allege executive dysfunction, did not allege frontal lobe damage, and did not address neuropsychological testing," as well as "did not even mention - let alone address - trial counsel's failures to utilize the results obtained pretrial by Drs. Yedid, Lipson, and Asarnow." (Id. at 7-8 (emphasis in original).)

Upon review, Petitioner's state habeas claim did not mention that trial counsel had retained or consulted with mental health experts, much less that some testing indicated Petitioner suffered from impairments. Instead, the state claim asserted that "in addition to investigating, preparing and presenting evidence of Prince Jr.'s family and social history of trauma and physical abuse, chronic neglect, poverty, and symptoms of mental illness, trial counsel was obligated to provide this information to the appropriate mental health experts so that they could properly evaluate Prince Jr. and then testify regarding the impact these incidences and mental illnesses had upon him." (Lodgment No. 219 at 1115.) Meanwhile, Petitioner now argues that "[t]rial counsel did not utilize their experts to explain Mr. Prince's impairments to the jury," and that "[c]ounsel's failure to properly present mitigating mental health expert testimony was compounded by counsel's decision to present a sociologist whose testimony left the jury with the impression that Mr. Prince simply had no deficits." (ECF No. 50 at 280, 286.) As Petitioner correctly observes: "State

habeas counsel did not even mention - let alone address - trial counsel's failures to utilize the results obtained pretrial by Drs. Yedid, Lipson and Asarnow." (ECF No. 40 at 8.) Petitioner's new allegations, that counsel failed to properly use and follow up on the results obtained by the retained experts, and inclusion of information concerning the results obtained at the time of trial as well as the results of testing performed during post-conviction proceedings, "fundamentally alter[s]" the previously-raised claim. See Dickens, 740 F.3d at 1319. Accordingly, the Court finds Claim XXV to be unexhausted.

### B. **Stay and Abeyance Under Rhines**

In Rose v. Lundy, 455 U.S. 509 (1982), the Supreme Court held that "federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims" and "reasoned that the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." Rhines v. Weber, 544 U.S. 269, 273 (2005), citing Lundy, 455 U.S. at 518-19. In Rhines, the Supreme Court recognized and stated that "[t]he enactment of AEDPA [The Antiterrorism and Effective Death Penalty Act] in 1996 dramatically altered the landscape for federal habeas corpus petitions" and "[a]s a result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." Id. at 274-75.

The Rhines Court held that when presented with a mixed petition by a habeas petitioner, "a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." Id. at 275-77. The Supreme Court also instructed that "stay and abeyance should be available only in limited circumstances" and was appropriate where: (1) "there was good cause for the petitioner's failure to exhaust his claims first in state court," (2) the "unexhausted claims are potentially meritorious" and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 277-78.

///

The parties agree that the federal Petition filed in this case contains both exhausted and unexhausted claims. (See ECF No. 36 at 3; ECF No. 40 at 2.) Petitioner seeks a stay under Rhines. (ECF No. 42.) Respondent opposes a stay. (ECF No. 45.)

### 1. **Good cause for Failure to Exhaust**

Petitioner asserts that he can establish good cause for a Rhines stay on two grounds. First, he contends that the ineffectiveness of state habeas counsel provides good cause for a stay in this case. (ECF No. 42-1 at 9-12.) He also argues the requirements for exhaustion set forth in Cullen v. Pinholster, 563 U.S. 170 (2011), constitute good cause for a stay. (Id. at 12-13.)

Petitioner first contends state habeas counsel "provided prejudicially deficient performance . . . by failing to investigate and present several colorable claims in state court," references Claims I, II, III, IV, XIV, XV, XXI(B) and XXV, and argues that "[b]ecause prior counsel was ineffective, Mr. Prince should not be held accountable to prior counsel's failings." (Id. at 9, citing Blake v. Baker, 745 F.3d 977, 983 (9th Cir. 2014).) "In Blake, [the Ninth Circuit] concluded that the ineffective assistance of post-conviction counsel could constitute good cause for a Rhines stay, provided that the petitioner's assertion of good cause 'was not a bare allegation of state postconviction (ineffective assistance of counsel), but a concrete and reasonable excuse, supported by evidence.'" Dixon v. Baker, 847 F.3d 714, 721 (9th Cir. 2017), quoting Blake, 745 F.3d at 983. In so holding, the Ninth Circuit stated that "the Rhines standard for [Ineffective Assistance of Counsel]-based cause is not any more demanding than the cause standard articulated in Martinez." Blake, 745 F.3d at 984; see Martinez v. Ryan, 566 U.S. 1, 14 (2012) ("[A] prisoner may establish cause for a default of an ineffective-assistance claim . . . where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."); see also Knowles v. Mirzayance, 556 U.S. 111, 124 (2009) ("Strickland requires a defendant to establish deficient performance and prejudice."), citing Strickland, 466 U.S. at 687. In Blake, the Ninth Circuit found good

16cv00871

cause for a failure to exhaust where the petitioner made "a sufficient showing that [the petitioner's] state post-conviction counsel's performance was defective under the standard of <u>Strickland</u>." <u>Id.</u>, 745 F.3d at 983.

Petitioner contends that state habeas counsel was ineffective for failing to investigate and present claims of ineffective assistance of trial counsel and for overlooking claims apparent from the record. Petitioner contends that "state habeas counsel wholly failed to conduct a jury investigation during state postconviction proceedings," and did not uncover a claim, raised as Claim I in the federal Petition, that a juror failed to honestly answer questions and concealed the fact that a high school friend had been a victim of Ted Bundy.[2] (ECF No. 42-1 at 10.) In the First Amended Petition, Petitioner added allegations to Claim I that another juror, who served on the jury for both phases of trial, failed to answer questions honestly and did not disclose the fact that she had previously been sexually assaulted and raped. (<u>See</u> ECF No. 50 at 43.) Petitioner also contends that state habeas counsel acted deficiently in failing to retain a DNA or other forensic expert, and as a result, did not raise Claims II and III of the federal Petition concerning trial counsel's performance with respect to DNA evidence and testing and the other physical evidence in the case. (ECF No. 42-1 at 10.) Petitioner faults state habeas counsel for failing to retain an eyewitness identification expert to assist in a challenge to trial counsel's performance concerning the eyewitness testimony at trial, raised as Claim IV in the federal Petition. (<u>Id.</u> at 10-11.) Petitioner also contends that state habeas counsel failed to raise claims of ineffectiveness of trial counsel in presenting evidence at the penalty phase, Claim XXV in the federal Petition, and failed to challenge trial counsel's performance in failing to rebut, object to, or request limiting instructions on evidence presented by the prosecution, Claims XIV, XV

_____

[2] As noted above, on October 11, 2019, Petitioner filed a First Amended Petition and supplemental volume to the Appendix. (<u>See</u> ECF Nos. 50, 51.) At the November 6, 2019 oral argument, Petitioner stated that the amended petition and supplemental appendix added allegations to Claim I concerning an additional juror, and the Court granted Petitioner's oral request to incorporate those allegations and materials to the instant motion.

16cv00871

and XXI(B) in the federal Petition.  (Id. at 11.)  Petitioner argues that both state appellate and habeas counsel failed to raise a challenge to the trial court's limitation on cross-examination of a prosecution expert, Claim XIII, and that state counsel failed to raise Claim V, which concerned an allegedly unconstitutional penalty phase instruction.  (Id.)

In support of his argument that state habeas counsel was ineffective, Petitioner refers to the declaration of state habeas counsel Gary B. Wells, submitted in support of the federal Petition.  (See ECF No. 50-4 at 74-75.)  Wells indicates that "[w]hen I represented Mr. Prince in state habeas proceedings, my funding for investigation (including travel) and experts was limited to $50,000," that "I did not seek additional funding because I believed the request to be futile," citing the relevant California Supreme Court policies and noting both that "[r]equests for funding in excess of the authorized amount had been denied in previous cases and the court had even refused to reimburse me for the time I incurred preparing such requests based on its stated policy," and that "I did bill the court for an amount exceeding the $50,000 and payment for that excess amount was denied."  (Id. at 74.)  Wells states he retained a mitigation specialist "to develop mitigating evidence that trial counsel may have failed to investigate," who obtained several declarations to support the state petition as well as provided her own declaration concerning the mitigation case.  (Id.)  Wells explains: "Because of the funding limitations, I had to take a shotgun approach to identifying areas where the investigation was incomplete, but that investigation was not exhaustive.  Also, because of these funding limitations, I was unable to retain the services of experts to support several claims and was forced to rely on treatises to explain the evidence that trial counsel should have presented through experts at trial.  I would like to have retained a number of experts, including both forensic experts for the guilt trial and mental health experts for the penalty phase."  (Id. at 75.)  Finally, Wells states: "Also because of the funding limitations, I was unable to retain an investigator to conduct a jury investigation."  (Id.)

Respondent maintains that Petitioner fails to demonstrate state habeas counsel was ineffective, asserting: "The fact that prior habeas counsel pursued Prince's case differently

than current counsel does not create good cause for failure to exhaust and does not warrant the stay Prince seeks." (ECF No. 45 at 8.) Respondent argues that "Wells' declaration clearly shows that he balanced limited resources in accord with the post-conviction strategies that he deemed to be the most effective, namely the alleged ineffective assistance of trial counsel with a particular emphasis on their presentation of the mitigation evidence," that "Wells conducted a comprehensive and thorough investigation which resulted in a 1265-page state habeas corpus petition that presented more than thirty-five ineffective-assistance-of-counsel claims and sub-claims with four volumes of exhibits" and that "[t]he fact that Wells may not have raised all the claims that federal habeas counsel believes Wells should have raised, does not mean that Wells was constitutionally ineffective." (Id. at 9.) Respondent contends that "Prince has failed to demonstrate that state habeas counsel's decisions were anything other than deliberate decisions regarding the best claims to present to the state court." (Id. at 10.)

Petitioner also faults state habeas counsel for failing to request additional funding, noting that counsel acknowledged he had sought it in other cases, asserts that "[c]ounsel chose to spend his entire investigation budget on a mitigation specialist and *nothing* on other investigation or experts," and argues that counsel "put all of his money in one place, and did not conduct even a superficial investigation of the rest of the case." (ECF No. 48 at 6) (emphasis in original).) The Court finds a lack of record support for Petitioner's assertion that "[s]tate habeas counsel stated that he spent the entirety of his $50,000 on a mitigation specialist," resulting in several declarations from family members and a declaration from the mitigation specialist. (See id.) While prior counsel indeed indicates that the funding for investigation and experts, including travel, was limited to $50,000 and that he retained a mitigation specialist, counsel did not state that the entirety of the investigation budget was expended on the mitigation specialist. Instead, counsel cited the limited amount of funds provided and readily acknowledged that he took a "shotgun approach" to the investigation, as well as that the habeas investigation "was not exhaustive." (ECF No. 50-4 at 75.) Nor does the Court find that the decision not to request

additional funding in itself amounted to deficient performance, particularly in view of counsel's stated experience that such requests had been denied in other cases, including the denial of compensation for the time spent preparing the requests, and given that the state court denied the portion of counsel's bill that exceeded the $50,000 limit.  (See id. at 74.)

However, Petitioner also contends that: "The State fails to acknowledge that the bulk of the unexhausted claims arise out of state habeas counsel's ineffective failure to investigate the case," and argues that "[a]ny strategic reasoning counsel may have exercised regarding the *presentation* of his case could not justify his failure to conduct a reasonable investigation before deciding on a strategy."  (ECF No. 48 at 5) (emphasis in original.)  This argument finds support in the Court's review of the record.

For instance, as noted above, prior counsel readily admits the state habeas investigation "was not exhaustive."  Again, state habeas counsel's declaration indicates that due to funding limitations, counsel was unable to retain experts to support several claims, such as "forensic experts" for guilt phase claims and "mental health experts" with respect to the penalty phase claims, and that counsel "was unable to retain an investigator to conduct a jury investigation."  (See ECF No. 50-4 at 75.)  Prior counsel's declaration does not explicitly indicate that he failed to conduct any investigation into those areas, but does state that instead of relying on retained experts, counsel relied on treatises to support several claims, and the declaration only names the retained mitigation specialist and outlines the investigation conducted into Petitioner's family and social history.  Thus, at a minimum, prior counsel concedes he did not retain forensic experts with respect to the guilt trial, mental health experts for the penalty phase, or an investigator to conduct a jury investigation.  (Id. at 75.)

Meanwhile, it is evident from even a cursory review of the First Amended Petition that an investigation into, or efforts to contact, the jurors on Petitioner's case would have borne fruit.  In particular, one juror now states that despite being asked whether she was a victim of a reported or unreported crime or potential victim of a violent act in the juror questionnaire, she did not disclose then or during voir dire she had been raped multiple

times, once at knifepoint. (ECF No. 50 at 47-51.) That same juror disclosed on her questionnaire she has been "threatened with a weapon," and during voir dire questioning described it as involving a break up and "showing of a knife" which did not result in legal action. (See ECF No. 50 at 48; ECF No. 51 at 34.) That same juror stated she "didn't want the court to think I would be biased if I revealed it" and "wanted to separate my experiences from the facts of the case and serve on that jury." (ECF No. 51 at 44.) The juror stated: "I wanted to be fair, but it has weighed on me since then whether or not I was. I felt I had a civic duty to get a scary person off of the streets," adding that she "was very moved by the testimony of Leslie Hughes-Webb in the Prince case because she fought off her attacker" and "remember feeling proud of her for doing that." (Id. at 44-45.)

It is also apparent that state habeas counsel's investigation of physical and forensic evidence in the case, and investigation of trial counsel's handling of those matters, was unreasonable. Not only does state habeas counsel acknowledge he did not retain any forensic experts concerning the guilt phase evidence, the record reflects that he did not even contact the attorney[3] who assumed primary responsibility for Petitioner's guilt-phase defense at trial. (ECF No. 50-10 at 8.) Trial counsel, in turn, now indicates he did not have a strategic reason for failing to raise at trial the issues of crime scene hair comparisons that excluded Petitioner or results of DNA testing that did not implicate Petitioner and cannot think of a strategic reason why the defense did not call a DNA expert to rebut the prosecution's trial expert. (See id. at 6-8.) As discussed above, the federal petition raises claims alleging trial counsel was ineffective for failing to challenge the prosecution's

---

[3] At oral argument, Petitioner asserted that both trial attorneys indicated they had not been contacted by any prior counsel, citing declarations those attorneys submitted in support of the federal Petition. Upon review of the two declarations, it appears that only Mr. Sheela, who bore primary responsibility for the guilt phase, so indicates in his declaration; Mr. Mandel, who was primarily responsible for the penalty phase, does not appear to address that subject in his declaration. (See ECF No. 50-10 at 4-8.)

presentation of DNA evidence, failing to seek testing of physical evidence and failing to argue forensic crime scene evidence that excluded Petitioner.

The Supreme Court instructs that: "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691; see also id. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.").

While the Court is sympathetic to the financial constraints detailed in state habeas counsel's declaration, his experience and resulting dim view of the likelihood of additional funding, as well as counsel's indication that he attempted to identify the areas where investigation was incomplete, the Court remains deeply troubled by his acknowledged failure to conduct any jury investigation, retain forensic experts or contact trial counsel responsible for that portion of the proceedings, or retain any mental health experts, broad areas that were central to each of the three major portions of Petitioner's trial proceedings-jury selection, the guilt phase and the penalty phase. In view of the record, the Court concludes that Petitioner's "assertion of good cause '[i]s not a bare allegation of state postconviction (ineffective assistance of counsel), but a concrete and reasonable excuse, supported by evidence.'" Dixon, 847 F.3d at 721, quoting Blake, 745 F.3d at 983.

Accordingly, based on the showing provided concerning state habeas counsel's failures in investigating and presenting the unexhausted claims at issue in the prior state

habeas petition, the Court concludes Petitioner has demonstrated good cause for his failure to exhaust.[4]

## 2. **Potential Merit of Unexhausted Claims**

With respect to the second prong, the <u>Rhines</u> Court advised that "even if a petitioner had good cause for that failure [to exhaust], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." <u>Id.</u>, 544 U.S. at 277, citing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). At the same time, the Supreme Court stated that "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." <u>Id.</u> at 278. The Ninth Circuit has since provided additional guidance on this prong of the <u>Rhines</u> analysis, stating in relevant part that:

> A federal habeas petitioner must establish that at least one of his unexhausted claims is not "plainly meritless" in order to obtain a stay under *Rhines*, 544 U.S. at 277, 125 S.Ct. 1528. In determining whether a claim is "plainly meritless," principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless "it is perfectly clear that the petitioner has no hope of prevailing." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). "A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." *Id.* (citing *Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)).

<u>Dixon</u>, 847 F.3d at 722.

---

[4] As noted above, Petitioner also asserts the requirements of <u>Pinholster</u> establish good cause for a stay. (<u>See</u> ECF No. 42-1 at 12-13.) Here, because Petitioner has demonstrated good cause for the failure to exhaust based on the asserted ineffective assistance of state habeas counsel, the Court finds it unnecessary to address this contention.

As an initial matter, Respondent's assertion that: "Prince cannot establish that his claims of state habeas counsel ineffectiveness are not plainly meritless as there is no constitutional right to counsel in state or federal collateral proceedings" does not appear relevant to the Court's analysis under Rhines. (See ECF No. 45 at 13.) This is because Rhines instructs that the reviewing habeas court must decide if the "unexhausted claims are plainly meritless." Rhines, 544 U.S. at 277. As Petitioner correctly observes, "[h]is unexhausted claims are claims of *trial counsel ineffectiveness*," "state habeas counsel's own ineffectiveness under *Rhines* only relates to whether a federal habeas petitioner has established good cause for failing to exhaust these claims of trial counsel ineffectiveness," and "state habeas counsel's ineffectiveness is not the *ground* for relief." (ECF No. 48 at 10.) Pursuant to Rhines, the Court's concern is with the potential merit of the unexhausted claims of trial counsel ineffectiveness.

Respondent argues that "Prince also cannot show the unexhausted claims raised in the Petition are not plainly meritless, given the requirements of California Penal Code section 1509," in that "[n]either these unexhausted claims nor any of the exhausted claims included in the Petition allege Prince is actually innocent, or is ineligible for a death sentence as required for relief under California Penal Code section 1509." (ECF No. 45 at 13-14.) Section 1509(d) provides in relevant part that "a successive petition whenever filed shall be dismissed unless the court finds, by the preponderance of all available evidence, whether or not admissible at trial, that the defendant is actually innocent of the crime of which he or she was convicted or is ineligible for the sentence." Cal. Penal Code § 1509(d). Upon review, the Court agrees with Petitioner's contention that "[s]ection § 1509(d)'s application to any successive state habeas petition filed by Mr. Prince is an unresolved question of state law that must be answered by the California Supreme Court." (ECF No. 48 at 11.) In accord with other district courts which have considered this matter, the Court

declines an invitation to speculate how the state court may treat his unexhausted claims,[5] given that the California Supreme Court, in upholding the statute at issue, "explicitly reserved 'as-applied' challenges to the statute by individual prisoners." Seumanu v. Davis, 2019 WL 1597518, at *2 (N.D. Cal. Apr. 15, 2019), citing Briggs v. Brown, 3 Cal. 5th 808, 827 (2017) ("We review here a facial challenge to the constitutionality of Proposition 66, and express no view on claims that may be presented by individual prisoners based on their own circumstances."); see also Stanley v. Ayers, 2018 WL 2463383, at *6 (N.D. Cal. June 1, 2018) ("[T]he Court cannot rule at this time that returning to state court would be futile based on § 1509(d).").

The fact remains that the Court is compelled to follow Ninth Circuit authority, which specifically instructs that "the federal court refrain from ruling on the merits of the claim unless 'it is perfectly clear that the petitioner has no hope of prevailing.'" Dixon, 847 F.3d at 722, quoting Cassett, 406 F.3d at 624. Applying that analysis, it is evident that at a minimum, several of Petitioner's unexhausted claims are not "plainly meritless." For instance, Petitioner contends in Claim I that "[o]n their juror questionnaires, and during voir dire," that two jurors, one who served as a juror on Petitioner's guilt phase jury and the other who served as a juror on both the guilt and penalty phase juries, "failed to answer material questions honestly," with one juror "concealing the fact that his close high school friend had been murdered by serial killer Ted Bundy" and the other juror "concealing the fact that she had been sexually assaulted and raped" and that honest answers would have provided grounds for cause challenges against both individuals. (ECF No. 50 at 43.) To merit relief on such a claim, "a party must first demonstrate that a juror failed to answer

---

[5] Given the Court's decision to refrain from speculation about how the state court might choose to treat Petitioner's unexhausted claims, the Court will similarly decline to consider Petitioner's related contention that "§ 1509(d) does not render Mr. Prince's unexhausted claims 'plainly meritless'" because "Mr. Prince has raised claims that suggest he 'is actually innocent of the crime of which he . . . was convicted.'" (ECF No. 48 at 12, quoting Cal. Penal Code § 1509(d).)

honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." McDonough Power Equipment Inc. v. Greenwood, 464 U.S. 548, 556 (1984) (emphasis in original). "[A]n honest yet mistaken answer to a voir dire question rarely amounts to a constitutional violation; even an intentionally dishonest answer is not fatal, so long as the falsehood does not bespeak a lack of impartiality." Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998) (en banc), citing McDonough, 464 U.S. at 555-56. As discussed previously, the juror who failed to disclose that she had been sexually assaulted and raped "didn't want the court to think I would be biased if I revealed it" and "wanted to separate my experiences from the facts of the case and serve on that jury." (ECF No. 51 at 44.) The juror stated: "I wanted to be fair, but it has weighed on me since then whether or not I was. I felt I had a civic duty to get a scary person off of the streets." (Id.) Given the allegations and relevant authority, the Court is unable to conclude that Claim I is "plainly meritless."

Additionally, in Claim II, Petitioner contends that "[t]rial counsel ineffectively failed to attack and undermine the prosecution's presentation of DNA evidence by Cellmark Diagnostics (Dr. Lisa Forman) and Forensic Science Associates (Dr. Ed Blake)" and "failed to utilize the DNA testing conducted by the FBI on the same samples that did *not* implicate Mr. Prince and other testing by the SDPD lab that *exculpated* Mr. Prince." (ECF No. 50 at 52) (emphasis in original).) Under clearly established federal law, "a defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel." Mirzayance, 556 U.S. at 122, citing Strickland, 466 U.S. at 687. In this case, the trial defense attorney who was primarily responsible for guilt phase concedes he "didn't have any strategic reason" for failing to raise the issue of hair comparisons that were conducted and did not match Petitioner or for failing to raise the issue of DNA testing conducted on forensic evidence that did not implicate Petitioner. (See ECF No. 50-10 at 6.) Trial counsel also notes he "can't think of any strategic reason for not calling our own DNA expert to rebut the prosecution's expert at trial, other than thinking I'd be able to cover important points in cross examination."

(Id.)  While the standard required to obtain relief on a claim of ineffective assistance of counsel is high, in view of prior counsel's statements, it is conceivable that Petitioner could demonstrate both deficient performance and prejudice.  In any event, the Court cannot conclude that "it is perfectly clear that the petitioner has no hope of prevailing" on Claim II such that the claim is plainly meritless.  See Dixon, 847 F.3d at 722, quoting Cassett, 406 F.3d at 624.   The Court finds Petitioner has satisfied the second Rhines prong, as it is evident that at least one of his unexhausted claims is not "plainly meritless."  See id., citing Rhines, 544 U.S. at 277.

### 3. Presence or Absence of Intentionally Dilatory Litigation Tactics

Concerning the third prong, the Supreme Court stated that "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all," and recognized that "[i]n particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death."  Rhines, 544 U.S. at 277-78.

Petitioner argues that "he has acted diligently in presenting his claims to this Court. He has respected and complied with the Court's filing deadlines, has conferred openly with counsel for the State, and has acted promptly and professionally in this litigation.  While he has not yet filed a state exhaustion petition, he has complied with this court's orders and the local rules."  (ECF No. 42-1 at 16, citing Civ LR HC.3(g)(5).)  Petitioner also generally asserts that: "A capital habeas petitioner does not engage in intentionally dilatory litigation tactics when he puts off filing unexhausted claims in state court (1) to comply with the local rules of the federal district court regarding exhaustion, see Salcido [v. Martel], 2013 WL 5442267 at *5, or (2) to comply with the California Supreme Court's requirement of In re Reno, 283 P.3d 1181, 1198-99 n.3 (2012), to provide a copy of the federal district court order identifying unexhausted claims with his exhaustion petition."  (Id. at 15.)

Respondent maintains that "clearly nothing prevented Prince from filing a successive habeas petition in state court as early as April 2016, as counsel clearly knew claims were being included in the petition to this Court that were not presented in state

court," noting that "[c]apital litigants have a clear and recognized incentive for delay" and "[e]very day of delay is in effect a reprieve for Prince." (ECF No. 45 at 15.) Respondent also argues that Petitioner's reliance on the cited cases is "misplaced" and that Petitioner's delay in filing an exhaustion petition is not contemplated or warranted under those cases, stating: "If there is no federal court order on exhaustion to provide, that is not an invitation to delay seeking relief as promptly as claims become known in order to wait for the federal proceedings to result in an order deciding whether claims submitted to the federal court have yet to be fairly presented to the state court." (Id. at 15-16.)

With respect to state exhaustion petitions, the California Supreme Court previously stated that: "In the future, as a judicially declared rule of criminal procedure, we require that such exhaustion petitions clearly and affirmatively allege which claims were deemed by the federal court to be exhausted, and which were not. Such allegations must be supported by 'reasonably available documentary evidence' (*People v. Duvall* (1995) 9 Cal.4th 464, 474, 37 Cal.Rptr.2d 259, 886 P.2d 1252), such as a copy of the district court's order." In re Reno, 55 Cal. 4th 428, 447, n.3 (2012); see also id. at 443 ("As explained in more detail below, such petitions must clearly and frankly disclose . . . (d) which claims were deemed unexhausted by the federal court and are raised for the purpose of exhaustion. This last disclosure must be supported by a copy of the federal court's order.").

In this case, both parties were ostensibly aware that an order or decision on exhaustion would be forthcoming. This is because the parties clearly outlined their positions on exhaustion in a joint statement filed in this Court, agreeing that twenty-two claims and/or sub-claims in the federal Petition are exhausted, nine claims and/or sub-claims are unexhausted and disagreeing on the exhaustion status of Claim XXV; the Court subsequently issued an order on the exhaustion status of the agreed-upon claims while taking the exhaustion status of the disputed claim under submission and indicating it would be decided along with the stay and abeyance issue. (See ECF Nos. 40, 41.) In view of this series of events, coupled with the state court rule outlined in Reno, the Court declines to

find that Petitioner has engaged in intentional delay as asserted by Respondent such that a stay should not issue. The Court finds Petitioner has satisfied the third <u>Rhines</u> prong.

## III. CONCLUSION AND ORDER

For the reasons discussed above, the Court **FINDS** Claim XXV to be unexhausted and **GRANTS** Petitioner's motion to stay the federal proceedings and hold the mixed federal petition in abeyance pursuant to <u>Rhines</u>.

In <u>Rhines</u>, the Supreme Court instructed that "district courts should place reasonable time limits on a petitioner's trip to state court and back." <u>Id.</u> at 278. The local rules of this district provide that: "If the petition indicates that there are unexhausted claims from which the state court remedy is still available, petitioner may be granted a thirty (30) day period in which to commence litigation on the unexhausted claims in state court." CivLR HC.3(g)(5); <u>see</u> <u>also</u> <u>Rhines</u>, 544 U.S. at 278 (indicating approval of a procedure that provided a petitioner 30 days to commence state court proceedings and 30 days to return to federal court after conclusion of the state court exhaustion proceedings), citing <u>Zarvela v. Artuz</u>, 254 F.3d 374, 381 (2nd Cir. 2001). Accordingly, Petitioner will present his unexhausted claims to the state court within 30 days of the filing date of this Order and will also submit proof of that filing in this Court. Petitioner will also file a brief report with this Court every 90 days thereafter to keep the Court updated on the status of the state petition. During the pendency of these state proceedings, proceedings on the federal case will be stayed. Any amended petition filed in this case must be filed within 30 days of the state court resolution of the exhaustion petition. If Petitioner fails to commence exhaustion proceedings in state court or file any amended petition in this Court within the deadlines set forth in the instant order, the stay will be lifted, and this case will proceed on the federal Petition pending at that time.

**IT IS SO ORDERED.**

**DATED: December 31, 2019**

Hon. Cynthia Bashant
United States District Judge